United States District Court
Eastern District of New York

1:18-cv-2216

| |
|---|
| Freddie Jamison individually and on behalf of all others similarly situated |
| Plaintiff |
| - against - |
| Trader Joe's Company and Trader Joe's East, Inc. |
| Defendant |

Complaint

The above-named plaintiff individually and on behalf of all others similarly situated, by attorneys, alleges upon information and belief, except for those allegations pertaining to plaintiff, which are based on personal knowledge:

1. Trader Joe's Company and Trader Joe's East, Inc. (collectively, "Trader Joe's" or "defendants") sells formed fruit bar products under the "Trader Joe's" brand (the "Products").

2. The Products are available in no fewer than four combinations, all of which include apples and one of either banana, coconut, mango or strawberry.

3. The Products are named by reference to their purported two main components such as "Trader Joe's Apple Mango fruit bar," or "2 ingredient bars."

4. The Products' common representations include the image of the apple on the left side, a "V" intended to designate the Products are vegan, and "Raw" and "wholesome" on the packaging for the box in which the Products are displayed.

5. The differences across the Products are based solely on the inclusion of the non-apple ingredients.

6. This includes the fruit which follows the "+" (plus sign) and its image on the label (i.e., strawberry), wrapper color (i.e. apple mango is yellow) and ingredients (i.e., apples, bananas).

7. An example of the front label and ingredients for the Apple Mango bar is below.





8. The representations, including but not limited to the image of a whole apple next to the other component ingredient, promote the products as being directly made from said ingredients.

9. In other words, the message is that the Products are made by taking whole intact fruits, washing, dicing or chopping, expressing juice, etc., then moulding or shaping together to form the final product.

10. The Products' claims are based on minimalism, whereas they are characterized and perceived by consumers as being made "only of fruit."

11. This is intended to distinguish the Products from those fruit-based snacks which have been a staple of American school lunch boxes for decades – the fruit roll-up (a version of fruit leather).

12. A standard fruit roll-up consists of ingredients which can include fruit purees and juices, corn syrups, various forms of added sugars, pectins, artificial colors and flavors.

13. In contrast, the Products here convey the opposite impression to consumers, who are increasingly avoiding foods which are full of hard to pronounce, artificial, processed ingredients and chemical preservatives.

14. To meet this consumer demand, the ingredient list on the back of the label declares "apples" followed by the second fruit component, i.e., "mangoes."

15. This gives a reasonable consumer the impression that the raw material ingredients are, for example, <u>whole</u> apples and <u>whole</u> mangoes, at the point directly prior to their transformation into the Products, as opposed to a processed or otherwise non-whole form product derivative.

16. Federal regulations, mirrored by those of this state, require that the name ascribed to an ingredient be a specific name as opposed to a collective name (subject to certain non-applicable exceptions).

17. For example, tomatoes are used in food processing in numerous forms – tomato paste, tomato puree, tomato jam, tomato sauce, tomato powder, diced tomatoes, etc.

18. A typical bottle of tomato sauce lists ingredients such as "Tomato Puree (Water, Tomato Paste), Diced Tomatoes," as opposed to the solitary word "tomatoes."

19. This is because (1) tomato puree is a different product from tomato sauce and (2) there are differences in the functional, sensory, textural, organoleptic, nutrient and other properties between the specific forms of an ingredient (i.e., tomato paste) and the collective name ("tomato"), which consumers understand as referring to a tomato that has not been processed.

20. An example of a product which uses a "collective name" as an ingredient in a non-misleading manner is store-bought refrigerated or frozen mashed potatoes mashed potatoes.

21. This is because the potatoes are brought to a manufacturer, where they are sorted, washed, steamed, chopped and mashed, in one processing line operation.

22. By listing ingredients with a collective name, a reasonable consumer gets the impression that the raw material used for the product existed in its whole, intact form at the direct point prior to the production of the products.

23. This gives consumers the impression that the products are necessarily fresher and healthier, because their purported component ingredients were not made years ago, and do not contain preservatives, which may be necessary if they remained on a warehouse shelf until the time they were used in the products.

24. It is misleading to list ingredients with a collective name because consumers are unable to distinguish the value, quality and nature of the actual ingredients prior to purchase.

25. This is especially relevant and material as consumers increasingly seek products made from whole, unprocessed ingredients as opposed to by-products or processed derivative ingredients.

26. The Products' listing of ingredients through the collective name of the fruits is deceptive, unlawful and misleading to reasonable consumers.

27. This is because the Products are not made through converting whole, intact fruits into the final product.

28. If defendants began the bar production process with whole intact fruits, the ingredient list would indicate the presence of an additional binding ingredient such as a gel, pectin, juice concentrate or syrup, needed to keep the individual fruit matter together.

29. The Products are based on apples, which contains c. 10-11% solids.

30. A fruit bar made primarily from apples contains c. 76-81% solids.

4

31. This high solid level is critical so the water activity of the Products will be .80-.85, and it will be a shelf-stable, safe product.

32. The only way to manufacture such a product is to include a form of apple powder, which is 95% solids.

33. The Products contain apple powder because of their dry texture, appearance and long shelf-life.

34. These attributes make it unlikely the Products are made with concentrates (70% solids), concentrated purees (32% solids) or juices (10% solids), derived from the component fruits

35. To reach a solid content as indicated, *supra*, the Products require apple powder.

36. As a result, the Products contain ingredients which have already been subjected to various levels of processing and transformation such that designating them by their collective name is misleading.

37. It is highly probable that the generic designation of "Apples" encompasses the presence of apple (and other fruit) powder.

38. Apple powder (and fruit powder generally) is used for its functional properties, including (1) binding components together with its high levels of pectin, (2) aiding humectancy, (3) increasing fiber content, (4) controlling water activity and (5) assisting with pH regulation.

39. The most common ways to make fruit powder are drum drying and spray drying.

40. In both methods, the input is juice or puree from the subject fruit or vegetable.

41. Drum drying takes the liquid and applies it as a thin layer or sheet over the outer surface of large revolving drums which are heated through steam.

42. This causes the liquid to dry, before grinding or pulverization transforms it into a powder form.

43. Apple powders made through spray drying typically use concentrated apple juice.

44. Juices from concentrates are those which have had their naturally occurring water removed through evaporation or by freezing out the water as ice.

45. Whatever form of juice concentration is applied, it is unlikely that the concentrate will closely resemble the unconcentrated form even when diluted back to its original state.

46. This is the result of the nutrients and flavoring agents being sensitive to processing conditions, which necessitates the addition of flavoring agents.

47. Spray drying brings the concentrated juice it into contact with hot gas, causing moisture to evaporate from the particles, and the dry powder particles are collected.

48. Regardless of the type of powder production used in the Products, they all involve juice and/or purees.

49. Since fruit powder is derived directly from juices and/or purees, it is deceptive and misleading for the Products' representations to indicate they are made through directly transforming the raw material fruit ingredients into the final product, without the use or addition of any processed derivative products.

50. The Products incorporate apple pieces (dices or grinds) which have had their water removed through dehydration/evaporation.

51. The inclusion of dried apple (and other fruit/vegetable) ingredients – powders and pieces – means water must be added to reconstitute or rehydrate them, prior to the time the final product is finished.

52. The Products do not indicate the presence of water in the ingredient list, which is misleading.

53. The Products' nutrient content, health and wellness claims which are misleading.

54. Defendants' representations have enabled them to command a substantial premium in comparison to alternative fruit bar products which use specific instead of collective names to designate their ingredients.

55. Excluding tax, the Products cost no less than $1.99, a premium price compared to other similar products.

## Jurisdiction and Venue

56. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

57. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

58. This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

59. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

60. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Class Allegations

61. The classes consist of (1) all consumers in all states and (2) all consumers in New York State who purchased any Products bearing any actionable representations during the statutes of limitation periods.

62. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

63. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

64. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class members are entitled to damages.

65. Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

66. Plaintiff is an adequate representative because his/her interests do not conflict with other members.

67. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

68. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

69. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

70. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Parties</u>

71. Plaintiff is a citizen of Queens County, New York.

72. Defendant Trader Joe's Company is a California corporation with a principal place of business in Monrovia, California.

73. Trader Joe's Company is an American privately-held chain of specialty grocery stores with approximately 457 locations in 40 states and Washington, D.C.

74. Trader Joe's Company is a market leader in organic and fresh food groceries in the United States, such that consumers look to it supply such products.

75. Trader Joe's Company has over 10,000 employees and realized over $9 billion in revenue and $550 million in net income in 2017.

8

76. Trader Joe's Company is engaged in the processing, packaging, labeling, marketing and distribution of Trader Joe's-brand products, which it sells in its retail locations.

77. Defendant Trader Joe's East Inc., is a Massachusetts corporation with a principal place of business in Boston and is a wholly-owned subsidiary of Trader Joe's Company.

78. In 2017, plaintiff purchased the Product(s) for no less than $1.99 per Product(s), excluding tax, at a store(s) within this District and/or state.

79. Plaintiff saw and relied on the misleading representations prior to purchase, causing plaintiff to pay a premium.

Violations of New York General Business Law §§ 349 & 350

80. Plaintiff repeats and realleges all allegations in foregoing paragraphs.

81. Defendants' acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

82. The representations, descriptions and identifications of the Products and its ingredients are false and misleading for the reasons described herein.

83. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have without getting all they bargained for.

Negligent Misrepresentation

84. Plaintiff incorporates by references all preceding paragraphs.

85. Defendants misrepresented the composition of the Products and had a duty to disclose their components to consumers.

86. At the time of the representations, defendants knew or should have known same were false or misleading, or made them without knowledge of their truth or veracity.

87. Defendants negligently misrepresented and/or negligently omitted material facts.

88. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

89. Plaintiff and class members would not have purchased the Products if the true facts had been known, thereby suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

90. Plaintiff incorporates by references all preceding paragraphs.

91. Defendants manufacture, distribute, market and sell formed fruit bar products purporting to consist of only apples and another fruit ingredients.

92. In so doing, the implication is that all of the Products' components existed in their whole, intact form, prior to the transformation into the final finished product, and warranted same to plaintiff and class members.

93. The Products were not made by directly incorporating apples (and the other ingredients) into the final product.

94. Rather, the Products were made through use of various processed forms derived from the component fruits though denoted by a collective name, i.e., "apples."

95. The Products did not conform to their affirmations of fact and promises.

96. Plaintiff and class members relied on defendant's claims, paying more than they would have otherwise.

<u>Fraud</u>

97. Plaintiff incorporates by references all preceding paragraphs.

98. Defendants described and identified the Products in a deceptive way when it could have used non-misleading terms, names or descriptions.

99. Defendants' purpose was to mislead consumers, who increasingly seek products with transparent ingredients, which they are familiar with and do not possess complicated-sounding names, often associated with ingredients which have undergone significant processing or alteration prior to being included in a product.

100. Defendants' intent was to distinguish its Products amongst numerous others that purport to be a healthy and simple snack, composed of "only" two ingredients.

101. Plaintiff and class members observed and relied on the representations.

102. Plaintiff and class members paid more than they would have due to the false representations, entitling them to damages.

### Unjust Enrichment

103. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

104. Defendants obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendants to correct their practices to comply with the law;
3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated:   April 14, 2018

          Respectfully submitted,

          Levin-Epstein & Associates, P.C.
          /s/Joshua Levin-Epstein
          Joshua Levin-Epstein
          1 Penn Plaza, Suite 2527
          New York, NY 10119
          Tel: (212) 792-0046

          Sheehan & Associates, P.C.
          /s/Spencer Sheehan
          Spencer Sheehan
          891 Northern Blvd., Suite 201
          Great Neck, NY 11021
          Tel: (516) 303-0552
          spencer@spencersheehan.com

1:18-cv-2216
United States District Court
Eastern District of New York

Freddie Jamison individually and on behalf of all others similarly situated

Plaintiff

- against -

Trader Joe's Company and Trader Joe's East, Inc.

Defendants

## Complaint

Levin-Epstein & Associates, P.C.
1 Penn Plaza # 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  April 14, 2018

/s/ Joshua Levin-Epstein<br>Joshua Levin-Epstein